## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| DARNELL FONDER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 12-CV-2115 |
| SHERIFF OF KANKAKEE COUNTY and ) | |
| KANKAKEE COUNTY, ) | |
| ) | |
| Defendants. ) | |

### OPINION

This case is before the court for ruling on the Motion for Class Certification (#43) filed by Plaintiff, Darnell Fonder. This court has carefully considered Plaintiff's Motion, the Response (#48)[1] filed by Defendants Sheriff of Kankakee County and Kankakee County, Plaintiff's Reply Memorandum (#46), and the documents provided by the parties. Following this careful and thorough review, Plaintiff's Motion for Class Certification (#43) is GRANTED.

### FACTS[2]

The Jerome Combs Detention Center (JCDC) is the centralized booking facility for municipal and county police departments in Kankakee County, Illinois. The jail houses detainees who are arrested with and without a warrant. Detainees who are being held for more than a day, including those who are awaiting a judicial determination of probable cause,

---

[1] Defendants' Response was originally filed as document #44. This court allowed Defendants leave to withdraw their Response (#44) and file a redacted Response (#48).

[2] The facts are taken from the statements of facts included in Plaintiff's Motion for Class Certification, Defendants' Response and Plaintiff's Reply Memorandum, as well as the documents provided by the parties.

may be moved into a housing unit within the jail. Police departments in Kankakee County do not have detention facilities. Therefore, persons arrested in Kankakee County who must appear before a judge before being permitted to post bond are held at the JCDC. The Sheriff's written policies mandate the strip search of all persons assigned to the general jail population, without regard to whether or not a judicial official had found that there was probable cause to detain them. The Sheriff's written policies provide that a strip search begins with the complete removal of clothing, followed by a visual examination of all areas of the detainee's body.

Plaintiff was arrested on April 24, 2010. The arresting officers, who did not have a warrant, believed Plaintiff had committed a domestic battery. Domestic battery is one of the offenses for which Illinois law requires an appearance before a judge for the setting of bond. Plaintiff was taken to JCDC and was processed into the general population at the JCDC. A correctional officer ordered Plaintiff to remove his clothes. Plaintiff complied with this order and was then told to open his mouth, ears and tongue, lift his testicles, spread his butt cheeks and move his feet around. Plaintiff was given a jump suit after the search and directed to a housing unit. Plaintiff remained at the JCDC for nearly two days until he was released without the filing of any charges "pending further investigation."

Defendants have conceded that the Sheriff's written policies for the JCDC require each incoming detainee to be strip searched. Defendants contend, however, that the general practice of the Sheriff's office and among correctional officers is not to conduct a strip search except when a detainee refuses to change into the facility's uniform, when contraband is

detected during the initial pat down search, or when the arresting officer requests a strip search in writing.

## PROCEDURAL HISTORY

On April 22, 2012, Plaintiff filed a Complaint (#1) against Defendants. Plaintiff also sued the City of Kankakee, Officer Trudeau and Officer Wagner. On July 9, 2012, Plaintiff filed an Amended Complaint (#23). On September 18, 2012, this court entered an Order (#29). This court accepted the Report and Recommendation (#27) filed by Magistrate Judge David G. Bernthal. This court granted the Motion to Dismiss filed by the City of Kankakee and dismissed the City as a Defendant in this case. This court denied the Motion for Judgment on the Pleadings filed by Officers Trudeau and Wagner and denied the Motion to Dismiss filed by Defendants. On February 6, 2013, Judge Bernthal entered an Order (#39) and granted the Motion to Sever filed by Officers Trudeau and Wagner. Judge Bernthal stated that Plaintiff "shall file a new case against Defendants Trudeau and Wagner within 14 days of the entry of this order."[3]

On February 20, 2013, Plaintiff filed a Second Amended Complaint (#40) in this case. Plaintiff stated that he "challenges the Sheriff's policy that requires the strip search of all arrestees being detained by the Sheriff before their initial appearance before a judge[.]"

---

[3] On February 20, 2013, in Case No. 13-CV-2045, Plaintiff filed a Complaint against Defendants Trudeau and Wagner. Plaintiff alleged that Defendants Trudeau and Wagner arrested Plaintiff on April 24, 2010, even though "neither Trudeau nor Wagner had observed Plaintiff commit an offense and neither was aware of facts from which a reasonable police officer could reasonably have believed that plaintiff had committed an offense." On June 10, 2013, Plaintiff filed a Stipulation of Dismissal, stating that it was stipulated between the parties "that this action may be dismissed with prejudice and without costs." The case was dismissed with prejudice the same day.

Plaintiff alleged, in pertinent part:

> 12. Plaintiff was subjected to a strip search, as described above, following his arrival at the Jerome Combs Detention Center on April 24, 2010.
>
> 13. Plaintiff contends that the Sheriff's policy of requiring the strip search of arrestees in advance of a judicial determination of probable cause is unreasonable under the Fourth Amendment. Plaintiff brings this claim individually and for all detainees held in the custody of the Sheriff of Kankakee County from April 20, 2010 to the date of entry of judgment in this case who were strip searched at the Jerome Combs Detention Center in advance of a judicial determination of probable cause to detain.
>
> 14. From April 22, 2010 through December 31, 2012, 12564 persons entered the Jerome Combs Detention Center in advance of a judicial determination of probable cause. Each of these persons is a member of the proposed class, which is so numerous as to render joinder impracticable.
>
> 15. The proposed class presents common questions of fact and law, i.e., whether defendant Sheriff actually applies his written strip search policies described above and, if so, whether these policies are unconstitutional.

16. Plaintiff's claim is typical of that asserted for the proposed class and plaintiff and his attorney will adequately represent the proposed class.

17. Class certification is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because the common questions of law and fact predominate over individual issues of damages.

Defendants filed their Answer (#41) on March 5, 2013.

On June 10, 2013, Plaintiff filed a Motion to re-set pre-trial schedule (#42). On June 11, 2013, Judge Bernthal entered a text order and granted Plaintiff's unopposed Motion. Judge Bernthal also set a schedule for briefing the issue of class certification.

## MOTION FOR CLASS CERTIFICATION

On June 24, 2013, Plaintiff filed his Motion for Class Certification (#43). Plaintiff contended that the Sheriff's policy requiring the strip search of arrestees in advance of a judicial determination of probable cause contravenes the Fourth Amendment. Plaintiff relied on Justice Alito's concurring opinion in *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1524-25 (2012). In *Florence*, the plaintiff had been arrested pursuant to a warrant in the state of New Jersey and was required to submit to a search while undressed at the Burlington County Detention Center and again when he was moved to the Essex County Correctional Facility. *Florence*, 132 S. Ct. at 1514. The plaintiff sued the governmental entities that operated the jails, one of the wardens and certain other defendants. *Florence*, 132 S. Ct. at 1514. The plaintiff maintained that persons arrested for a minor

offense could not be required to remove their clothing and expose the most private areas of their bodies to close visual inspection as a routine part of the intake process. *Florence*, 132 S. Ct. at 1514-15. The plaintiff contended that officials could conduct this kind of search only if they had reason to suspect a particular inmate of concealing a weapon, drugs or other contraband. *Florence*, 132 S. Ct. at 1515. The plaintiff won at the district court level but the Third Circuit Court of Appeals reversed. *Florence*, 132 S. Ct. at 1515. The United States Supreme Court granted certiorari and considered whether "every detainee who will be admitted to the general population may be required to undergo a close visual inspection while undressed." *Florence*, 132 S. Ct. at 1513. The Court concluded that the search procedures used "struck a reasonable balance between inmate privacy and the needs of the institutions" and that the "Fourth and Fourteenth Amendments do not require adoption of the framework of rules petitioner proposes." *Florence*, 132 S. Ct. at 1523.

In his concurring opinion, Justice Alito stated:

> I join the opinion of the Court but emphasize the limits of today's holding. The Court holds that jail administrators may require all arrestees *who are committed to the general population of a jail* to undergo visual strip searches not involving physical contact by corrections officers. To perform the searches, officers may direct the arrestees to disrobe, shower, and submit to a visual inspection. As part of the inspection, the arrestees may be required to manipulate their bodies.

*Florence*, 132 S. Ct. at 1524 (emphasis in original) (Alito, J. concurring). Justice Alito went on to clarify:

> It is important to note, however, that the Court does not hold that it is *always* reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population. Most of those arrested for minor offenses are not dangerous, and most are released from custody prior to or at the time of their initial appearance before a magistrate. In some cases, the charges are dropped. In others, arrestees are released either on their own recognizance or on minimal bail. In the end, few are sentenced to incarceration. For these persons, admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible. For example, the Federal Bureau of Prisons (BOP) and possibly even some local jails appear to segregate temporary detainees who are minor offenders from the general population. (Citation omitted).
>
> The Court does not address whether it is always reasonable, without regard to the offense or the reason for the detention, to strip search an arrestee before the arrestee's detention has been reviewed by a judicial officer.

*Florence*, 132 S. Ct. at 1524-25 (Alito, J., concurring).  Justice Alito stated that the "lead opinion explicitly reserves judgment on that question." *Florence*, 132 S. Ct. at 1525 (Alito, J., concurring).

Plaintiff then argued that he should be allowed to bring his claim as a class action. He argued that his claim involves a common contention capable of classwide resolution and satisfies the requirements of Rule 23(a) and Rule 23(b)(3).  As far as the 23(b)(3) requirement of predominance, Plaintiff argued that "[t]o prove the class strip search claim, plaintiff will show that the Sheriff applies his written policy to strip search detainees in advance of a judicial determination of probable cause" and will also "show that this practice is unreasonable."  Plaintiff noted that "[w]hen a proposed class challenges a uniform policy, the validity of the policy tends to be the predominant issue in the litigation," quoting *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 614 (N.D. Ill. 2009).  Plaintiff also argued that a class action is superior to other methods for adjudicating the claims of the members of the proposed class.

Plaintiff asked this court to order that this case proceed as a class action pursuant to Rule 23(b)(3) for:

> All persons held in the custody of the Sheriff of Kankakee County from April 20, 2010 to the date of entry of judgment who, following a warrantless arrest, were strip searched in advance of a judicial determination of probable cause.

On August 21, 2013, Defendant filed a Response to Plaintiff's Motion for Class

Certification. Defendants argued that Plaintiff's Motion should be denied because Plaintiff has not satisfied the requirements of Rule 23(a) and Rule 23(b)(3). Defendants stated that "[a]lthough the Sheriff's written policies for JCDC require each incoming detainee be 'strip searched,'" this is not the general practice of the Sheriff's office and among correctional officers. Defendants attached affidavits from Michael Downey, Chief of Corrections at the JCDC, and ten employees of JCDC. Downey stated that JCDC has eight cells in the intake area to hold inmates both before and during the booking process. It has eight housing units which can house up to 466 inmates. JCDC can house a maximum of 16 inmates in two segregation housing units and has a medical unit where inmates with medical issues are housed. Downey stated that whether an arrestee is transferred to a housing unit depends on a number of factors, including the number of total inmates at JCDC at the time, the number of new inmates entering the jail and the availability of beds for inmates in each housing unit.

    Downey also stated that strip searches "take place only when the arresting officer requests the search in writing or when contraband (weapons or drugs) is found during the initial pat down search." The JCDC employees stated in their affidavits that, when arrestees were being moved to a housing unit, it was their practice to escort the detainee into an individual shower room with a curtain, instruct the detainee to remove their clothing, give the detainee the jail uniform and instruct the detainee to shower and put on the uniform. The employees also stated that they have conducted strip searches only when the arresting officer requests the search in writing or when contraband is found during the initial pat down search.

    Defendants argued that Plaintiff could not establish the requirements of Rule 23,

9

including numerosity. They argued that individual, fact-specific inquiries will be necessary for each putative member of the class and that the class mechanism cannot be utilized for cases steeped in individual issues.

Plaintiff filed a Reply Memorandum on September 18, 2013. Plaintiff responded to all of Defendants' arguments. Plaintiff argued that he had shown that he met all of the requirements of Rule 23 so that this court should allow the case to proceed as a class action. Regarding numerosity, Plaintiff stated that, in January 2013, Defendants produced the name, address, date of birth and dates of arrest of the 9313 persons who, from April 22, 2010 to December 31, 2012, entered the JCDC in advance of a judicial determination of probable cause to arrest. Plaintiff stated that his counsel prepared and mailed a form letter to 416 of these 9313 persons. Plaintiff's counsel mailed the letters from August 26, 2013 to August 30, 2013. As of September 18, 2013, 116 of the 416 letters had been returned by the postal service as non-deliverable. Out of the 300 persons to whom the letter was presumably delivered, 46 persons signed and returned declarations. In the 46 declarations returned, which Plaintiff attached to his Reply Memorandum, the declarants stated that they were arrested after April 21, 2010, and were brought to JCDC. They stated that they were not arrested on a charge which involved drugs or a controlled substance, did not refuse to change into a jumpsuit at the jail and did not have contraband when searched. They stated that they were strip searched after they arrived at JCDC before they saw a judge. Plaintiff argued that, based on this return rate, it is likely that at least 1400 persons were strip searched at the JCDC before a judicial determination of probable cause between April 22, 2010 and

December 31, 2012.

## ANALYSIS

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012). As a threshold matter, the proposed class must meet the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation. *Messner*, 669 F.3d at 811. "When certification is sought under Rule 23(b)(3), as it is here, proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other methods of resolving the controversy." *Messner*, 669 F.3d at 811. Plaintiff bears the burden of showing that a proposed class satisfies the Rule 23 requirements, but need not make that showing to a degree of absolute certainty. *See Messner*, 669 F.3d at 811.

In analyzing whether the Rule 23 requirements have been met, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811. However, a court may not just assume the truth of the matters as asserted by the plaintiff. *Messner*, 669 F.3d at 811. "If there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Messner*, 669 F.3d at 811, *quoting Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The United States Supreme Court has cautioned, however, that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

11

certification stage." *Amgen, Inc. v. Conn. Retirement Plans & Tr. Funds*, 133 S. Ct. 1184, 1194-95 (2013). Merits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Amgen, Inc.*, 133 S. Ct. at 1195.

## RULE 23(a)

## NUMEROSITY

To satisfy numerosity, Plaintiff must prove that the class is so large that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff argued in his Motion for Class Certification that Defendants agreed that the proposed class consists of more than 100 persons so that the class satisfied the numerosity requirement of Rule 23(a). Plaintiff relied on Defendants' responses to Plaintiff's Request to Admit, wherein Defendants admitted that "[f]or the period of April 22, 2010 to November 31 [sic], 2012, more than 100 persons entered the JCDC following an arrest without a warrant in advance of a judicial determination of probable cause to arrest." Plaintiff noted that the general rule is that a class of 40 satisfies the numerosity requirement.

In their Response, Defendants argued that Plaintiff had provided no credible evidence to establish that the class was so numerous that joinder is impracticable. Defendants pointed out that, while they admitted that more than 100 persons entered the JCDC following an arrest without a warrant in advance of a judicial determination of probable cause, they specifically denied that each person arrested without a warrant was subject to the written strip search policy. Based upon the affidavits they submitted, Defendants argued that, in fact, the

practice at JCDC was not to subject new inmates to the written strip search policy. Defendants also argued that not all of the persons entering the JCDC following an arrest without a warrant in advance of a judicial determination of probable cause actually were moved into housing units.

In his Reply Memorandum, Plaintiff stated that he had presented evidence that 46 persons (out of 300 persons who received a letter from Plaintiff's counsel) were strip searched when they entered the JCDC. Plaintiff also stated that this evidence, when projected over all persons who entered the JCDC following a warrantless arrest, showed that more than 1400 persons were strip searched.

In resolving this factual dispute for purposes of the class certification issue, this court concludes that the affidavits submitted by Plaintiff call into serious question Defendants' evidence that strip searches are conducted only in certain, narrow circumstances. Plaintiff's evidence shows that at least 47 persons were strip searched even though no contraband was found during the initial pat down search.[4] This court agrees with Plaintiff that he has adequately shown that the numerosity requirement is met in this case. "Generally speaking, when the putative class consists of more than 40 members, numerosity is met, but there is nothing magical about that number." *Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ill.

---

[4] There is the possibility that the strip searches were conducted because of a written request by the arresting officer. Plaintiff is correct, however, that Defendants have not cited any authority for the proposition that a written request for a strip search by the arresting officer would legitimize the strip search. This court agrees that the possibility that the arresting officer requested the strip search in writing does nothing to show that the search was reasonable and did not violate the Fourth Amendment.

2010). Plaintiff has identified 47 potential class members, himself and the 46 who returned affidavits. He has also argued that this evidence shows the potential for more than 1400 class members. This court concludes that the 47 individuals alone are sufficient to meet the numerosity requirement. *See Flood*, 270 F.R.D. at 417 (46 individuals alone sufficient).

## COMMONALITY AND TYPICALITY

In order to establish commonality, Plaintiff must prove that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). A common nucleus of operative fact is usually enough to satisfy the commonality requirement. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998); *Flood*, 270 F.R.D. at 417; *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 612 (N.D. Ill. 2009). The Supreme Court has held that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), *quoting Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 (1982). However, the Seventh Circuit has been clear that variations in damages will not defeat class certification. *See Butler v. Sears, Roebuck & Co.*, ___ F.3d ___, 2013 WL 4478200, at *5 (7th Cir. 2013) ("[i]t would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages); *Messner*, 669 F.3d at 815 ("[i]t is well established that the presence of individualized questions regarding damages does not prevent [class] certification"); *Flood*, 270 F.R.D. at 418.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 616 (W.D. Wis. 2003), *quoting Falcon*,

14

457 U.S. at 157 n.13. "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Streeter*, 256 F.R.D. at 612, *quoting Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008).

Defendants have argued that Plaintiff cannot prove that his claim is common or typical of the proposed class because the question of whether the alleged searches violated the Fourth Amendment will require a fact-bound inquiry into the individual circumstances and facts of each search in order to determine if the search is constitutional. This court does not agree.

Plaintiff's proposed class is limited to members who were arrested without a warrant and share the experience of being strip searched prior to a judicial determination of probable cause. The common issue is whether Defendants' policy violates the Fourth and Fourteenth Amendments and the common nucleus of operative fact is the common experience of being strip searched, following a warrantless arrest, in advance of a judicial determination of probable cause. The issue raised concerns "standardized conduct towards members of the proposed class," which is sufficient to establish commonality. *See Streeter*, 256 F.R.D. at 612, *quoting Keele*, 149 F.3d at 594; *see also Young v. Cnty. of Cook*, 2007 WL 1238920, at *5 (N.D. Ill. 2007) ("[c]ourts have consistently held that class actions challenging blanket strip search policies satisfy Rule 23(a)(2)'s commonality requirement"). Plaintiff's challenge to the written strip search policy also satisfies the typicality requirement. *See Streeter*, 256 F.R.D. at 613. Plaintiff is challenging the same strip search policy as the class he seeks to

15

represent. *See Streeter*, 256 F.R.D. at 613; *Young*, 2007 WL 1238920, at *6.

## ADEQUACY OF REPRESENTATION

In order to satisfy the adequacy of representation requirement, Plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy of representation requirement mandates that both the class representative and counsel for the named plaintiff zealously represent and advocate on behalf of the class as a whole." *Flood*, 270 F.R.D. at 418. Defendants have argued that Plaintiff is not an adequate class representative because he has not shown that the facts and circumstances of his own case are so similar to the proposed class members' cases that he can fairly and adequately represent the class. Defendants contend that the search Plaintiff has described "deviates severely from the general practice at the JCDC." In response, Plaintiff argued that his claim that he was strip searched at the JCDC because of the Sheriff's express policy is the same claim asserted by all other members of the proposed class. This court agrees with Plaintiff.

Class counsel "must be experienced and qualified and generally be able to conduct the litigation." *Flood*, 270 F.R.D. at 418. Defendants have not disputed that class counsel is adequate in this case. Plaintiff's counsel has submitted a list of cases demonstrating his work in class action litigation. Counsel also stated that he has argued nearly 150 federal appeals, including five cases in the United States Supreme Court. This court finds counsel qualified to serve as class counsel in this case. *See Streeter*, 256 F.R.D. at 614.

## RULE 23(b)(3)

## PREDOMINANCE

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This requirement is "far more demanding" than Rule 23(a)(2) commonality. *Amchem Prods., Inc.*, 521 U.S. at 623-24. There is no mathematical or mechanical test for predominance. *Messner*, 669 F.3d at 814. "An issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Butler*, 2013 WL 4478200, at *4, *quoting Dukes*, 131 S. Ct. at 2551. Common issues need only predominate, not outnumber, individual issues. *Butler*, 2013 WL 4478200, at *4.

Defendants have argued that the class mechanism cannot be used for cases "steeped" in individual issues. However, generally, "[w]hen a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Streeter*, 256 F.R.D. at 614; *see also Young,* 2007 WL 1238920, at *7; *Calvin v. Sheriff of Will Cnty.*, 2004 WL 1125922, at *4-5 (N.D. Ill. 2004), *Blihovde*, 219 F.R.D. at 620-22*; cf. Rattray v. Woodbury Cnty., Iowa*, 253 F.R.D. 444, 461 (N.D. Iowa 2008), *aff'd on other grounds,* 614 F.3d 831 (8th Cir. 2010) (finding predominance requirement was not met in a strip search case but recognizing that, in recent decisions, "other courts have uniformly certified Rule 23(b)(3) classes in strip-search cases over objections like those the County raises here" (citing cases)).

## SUPERIORITY

This court also finds that Plaintiff has shown that a class action is the superior method for pursuing these claims. Plaintiff's constitutional challenge to the Sheriff's written policy of strip searching those arrested without a warrant in advance of a judicial determination of probable cause is the primary issue in this case. The judicial economy from consolidation of the separate claims is large because Plaintiff has shown that the class is likely more than 1400 people, and thus, even if only a modest portion of these potential claims were filed, the court would be forced to resolve the identical issue regarding the common policy multiple times. *See Young*, 2007 WL 1238920, at *8. Moreover, as the damages for each class member are likely to be relatively small, certifying this class allows for the vindication of the rights of people who individually would be without effective strength to bring a suit. *See Blihovde*, 219 F.R.D. at 622.

## CONCLUSION

This court has concluded that Plaintiff has met the requirements of Rule 23(a) and Rule 23(b)(3). This court therefore concludes that Plaintiff's Motion for Class Certification (#43) should be granted.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for Class Certification (#43) is GRANTED.

(2) This case is referred to Judge Bernthal so that a new scheduling order may be entered.

ENTERED this 15th day of October, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE